**Wilma L. SCHWENKE,**
**Plaintiff–Appellant,**

v.

**SKAGGS ALPHA BETA, INC.,**
**Defendant–Appellee.**

No. 86–2651.

United States Court of Appeals,
Tenth Circuit.

Oct. 4, 1988.

A. Paul Schwenke (Bruce J. Udall, with him on the brief), Salt Lake City, Utah, for plaintiff-appellant.

David R. Money (Keven M. Rowe of Jones, Waldo, Holbrook & McDonough, with him on the brief), Salt Lake City, Utah, for defendant-appellee.

Before LOGAN, MOORE, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Wilma L. Schwenke, a Polynesian born and raised in Hawaii, brought a civil rights action in the United States District Court for the District of Utah against her erstwhile employer, Skaggs Alpha Beta, Inc. Her claim was that she was denied a job promotion in January, 1985, because of her race. Based on this alleged discriminatory failure to promote, Schwenke's complaint set forth two causes of action. The first cause of action was a claim under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e, *et seq.* (1982). A second cause of action was brought under 42 U.S.C. § 1981 (1982). In addition, this second cause of action included a pendent state claim for breach of an oral contract.[1]

Skaggs filed an answer and extensive discovery ensued wherein the depositions of all interested parties were taken. The

---

1. Counsel for Skaggs refers to a "Corrected Amended Complaint," but was unsure of whether this Corrected Amended Complaint was filed with the district court, and it is not in the record before us. Whether the pendent claim is separate from, or included in, the second cause of action is immaterial to this appeal. *See infra* n. 2.

deposition of the plaintiff, Schwenke, when transcribed, consisted of 135 pages.

Schwenke and Skaggs then filed cross-motions for summary judgment, each contending that there was no genuine issue of any material fact. After a hearing, the district judge took the matter under advisement. The district judge then issued and published a Memorandum Decision and Order denying Schwenke's motion for summary judgment and granting Skaggs' motion for summary judgment.[2] *Schwenke v. Skaggs Alpha Beta, Inc.,* 649 F.Supp. 333 (D. Utah 1986). Schwenke now appeals the summary judgment entered in favor of Skaggs. We affirm.

On appeal, Schwenke argues that the district court erred in granting Skaggs summary judgment because there *were* genuine issues of material facts. However, in the district court Schwenke's position was that there was *no* genuine issue of any material fact.

This Court must determine whether Skaggs has demonstrated the absence of any genuine issue of material fact and its entitlement to judgment as a matter of law. Although it is frequently argued that summary judgment is inappropriate for civil rights cases, this Court, as well as others, have frequently affirmed summary judgment for defendants in Title VII cases. *See Carey v. United States Postal Service,* 812 F.2d 621 (10th Cir.1987); *Clark v. Atchison, Topeka & Santa Fe Railway Co.,* 731 F.2d 698 (10th Cir.1984); and *Klein v. Trustees of Indiana University,* 766 F.2d 275 (7th Cir.1985).

The Ninth Circuit has articulated the role of summary judgment in Title VII cases in a particularly clear and cogent passage. In *Foster v. Arcata Associates, Inc.,* 772 F.2d 1453, 1459 (9th Cir.1985) (citations omitted), the Ninth Circuit spoke as follows:

> Although courts are generally cautious about granting summary judgment when

motivation and intent are at issue, as in Title VII and ADEA cases, such relief may nonetheless be appropriate. One purpose of the [*McDonnell Douglas*] allocation of burdens in Title VII and ADEA actions is to enable the district courts to identify meritless suits and dispense with them short of trial.

Skaggs' position on appeal is that the district court did not err in granting it summary judgment because, in reality, there were no genuine issues of material facts. In making this argument, Skaggs relies primarily upon Schwenke's own deposition as itself demonstrating that Schwenke's Title VII claim and her 1981 claim are without substance or legal merit. We agree.

The background facts out of which this controversy arises are not in dispute and are fully and accurately set forth in the district court's Memorandum Decision and Order. As a result, these facts will not be repeated here in any great detail.

As indicated, Skaggs' motion for summary judgment is based to a considerable degree, if not entirely, on Schwenke's own testimony. In her deposition, Schwenke testified that in early January, 1985, she accepted employment with one of Skaggs' competitors for a better paying position. Schwenke reserved the right, however, to confer with Skaggs to see if she had a chance to be promoted by Skaggs to the position of supervisor of Skaggs' sales audit department. A day or two after accepting a job with Skaggs' competitor, Schwenke gave two weeks notice of termination to her supervisor, Sally Huntsman. On that occasion Huntsman informed Schwenke that she (Huntsman) was interviewing for a new position with Skaggs, and that her position as supervisor of the sales audit department might become immediately available.

---

**2.** The district court found that the section 1981 claim was virtually identical to the Title VII claim and thus granted Skaggs' motion for summary judgment as to both the Title VII and the section 1981 claim. *Schwenke v. Skaggs Alpha Beta, Inc.,* 649 F.Supp. 333, 340 (D. Utah 1986). The district court also found that once the feder-

al claims were dismissed, the pendent state law claim for breach of oral contract should be dismissed as well under the rule of *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). *Id.* at 340–41.

Three days later Huntsman was selected to fill this new position. A week after Huntsman was promoted Schwenke informed David Walters, who was in charge of selecting Huntsman's successor, that she (Schwenke) wished to be considered for the position vacated by Huntsman. At that meeting Walters informed Schwenke that he was going out of town for a few days, and that selection of Huntsman's successor would be delayed until he returned. Schwenke later decided that because of Walters' "general attitude" she didn't have a chance to succeed Huntsman and, accordingly, accepted the offer of Skaggs' competitor and went to work for it.[3]

On Walters' return he began the selection process for Huntsman's successor, considering Schwenke along with several others. However, the supervisory job was eventually given to Roy Baron. In his deposition Walters testified that it was company policy to "promote from within," if possible. He further testified that since Schwenke had left Skaggs employ, Skaggs looked first for a qualified person within the company. Walters' testimony indicated that the selection of Baron was based on a favorable performance review, recommendations, a personal interview, and the fact that Baron had a bachelor's degree in accounting.

Without further detailing the evidentiary matter before the district court on these cross-motions for summary judgment, our study of the record convinces us that there was no *genuine* issue of any *material* fact and that the district court did not err in granting Skaggs summary judgment. The district court was faithful to the litany of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny. *See, e.g., Furnco Construction Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); and *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75

L.Ed.2d 403 (1983). On the record, Skaggs had a legitimate business reason for awarding the position of supervisor of the sales audit department to Baron and did not discriminate against Schwenke because she was a Polynesian.

Judgment affirmed.

---

**3.** Plaintiff's complaint alleges that she was forced to leave defendant's employ because of continuing discrimination. However, the record does not support such a theory, and appellant does not argue the issue on appeal.